IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARNEZ L. REID | : | |
| | : | |
| *Plaintiff* | : | |
| | : | CIVIL ACTION |
| v. | : | NO. |
| | : | |
| ISAAC TRITT | : | |
| and | : | |
| ANTHONY AQUILER | : | |
| and | : | |
| JOSEPH N. HOGARTH | : | |
| and | : | |
| PENBROOK BOROUGH | : | |
| | : | |
| *Defendants* | : | |

**COMPLAINT WITH JURY DEMAND**

This action is filed by Plaintiff Arnez L. Reid against Defendants Isaac Tritt, Anthony Aquiler, Joseph N. Hogarth, and Penbrook Borough, seeking damages under 42 U.S.C. § 1983 for unreasonable use of force, unlawful search and seizure, and municipal liability in violation of Mr. Reid's Fourth Amendment rights. This action also asserts state law claims for assault, battery, false arrest, and false imprisonment.

**Jurisdiction**

1. This action is brought pursuant to 42 U.S.C. § 1983. This court has original jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**Venue**

2. A substantial part of the events and omissions giving rise to the claims set forth herein occurred in Penbrook Borough, Dauphin County, Pennsylvania. Thus, pursuant to 28 U.S.C. §

1

1391(b)(2), venue is proper in the United States District Court for the Middle District of Pennsylvania.

**Parties**

3. Plaintiff Arnez L. Reid (hereinafter referred to as "Mr. Reid") is an adult individual, a citizen of the United States, and a resident of the Commonwealth of Pennsylvania, domiciled in the City of Harrisburg, County of Dauphin.

4. Defendant Isaac Tritt (hereinafter referred to as "Officer Tritt") is an adult individual and resident of the Commonwealth of Pennsylvania with a business address of 150 South 28th Street, Penbrook, PA 17103, and who at all times relevant and material hereto was an agent and employee of Penbrook Borough, assigned to and working as a law enforcement and patrol officer within the Penbrook Borough Police Department, acting and/or failing to act within the course and scope of said agency and employment, and acting under color of state law. He is named as a defendant in his individual capacity.

5. Defendant Anthony Aquiler (hereinafter referred to as "Lt. Aquiler") is an adult individual and resident of the Commonwealth of Pennsylvania with a business address of 150 South 28th Street, Penbrook, PA 17103, and who at all times relevant and material hereto was an agent and employee of Penbrook Borough, assigned to and working as a law enforcement officer, lieutenant, and supervisor within the Penbrook Borough Police Department, acting and/or failing to act within the course and scope of said agency and employment, and acting under color of state law. He is named as a defendant in his individual capacity.

6. Defendant Joseph N. Hogarth (hereinafter referred to as "Chief Hogarth") is an adult individual and resident of the Commonwealth of Pennsylvania with a business address of 150

South 28th Street, Penbrook, PA 17103, and who at all times relevant and material hereto was an agent and employee of Penbrook Borough, assigned to and working as a law enforcement officer, supervisor, and police chief within the Penbrook Borough Police Department, serving as an official policymaker for Penbrook Borough and the Penbrook Borough Police Department, acting and/or failing to act within the course and scope of said agency and employment, and acting under color of state law. He is named as a defendant in his individual and official capacities.

7. Defendant Penbrook Borough is a local government unit, organized and existing under the laws of the Commonwealth of Pennsylvania, overseen and operated by a mayor and eight-member city council, with its offices located at 150 South 28th Street, Penbrook, PA 17103, and which at all times relevant and material hereto held fiscal, legislative, executive, policymaking, and operational authority over the Penbrook Borough Police Department, its police chief, its police lieutenants, and its police officers.

**Factual Background**

8. On June 18, 2022, at approximately 2:00 p.m., Mr. Reid was on a motorcycle ride in Penbrook, PA with his friend Chalmers Carpenter (hereinafter referred to as "Mr. Carpenter").

9. Mr. Reid was operating his maroon Harley Davidson, riding behind Mr. Chalmers, who was operating his blue Kawasaki.

10. As Mr. Reid and Mr. Carpenter proceeded south along 28th Street, they passed the Penbrook Borough police station where Officer Tritt was on duty, in full uniform, and sitting in his marked patrol car in the station parking lot.

11. Officer Tritt observed the two motorcycles drive by and decided he needed to stop Mr. Carpenter's blue motorcycle because its rear license plate was bent up and was hard for the officer to read.

12. Officer Tritt pulled out of the police station parking lot and, after about 30 seconds of driving south on 28th Street, caught up with the motorcycles on 28th Street near Parkway Boulevard and Market Street.

13. Officer Tritt followed the two motorcycles southbound on 28th Street, with Mr. Reid's bike directly in front of Officer Tritt's patrol car, Mr. Carpenter's bike directly in front of Mr. Reid, and an unidentified car directly in front of Mr. Carpenter.

14. After approximately 30 seconds of following directly behind Mr. Reid, Officer Tritt initiated his traffic stop of Mr. Carpenter by activating his patrol car's emergency lights and siren.

15. Immediately upon Officer Tritt activating his lights and siren, the car in front of Mr. Carpenter suddenly slowed.

16. As a result of the car in front of him suddenly slowing, Mr. Carpenter suddenly slowed his motorcycle, which, in turn, forced Mr. Reid to suddenly slow his motorcycle.

17. There was no impact between any of the vehicles.

18. The unidentified car proceeded and left the scene.

19. Mr. Reid's sudden slowing of his motorcycle did not interfere with any other traffic or individual.

20. Upon seeing Mr. Reid suddenly slow his motorcycle, Officer Tritt decided he needed to cite Mr. Reid for following too closely.

21. Mr. Carpenter and Mr. Reid promptly drove their motorcycles onto the sidewalk abutting the right-hand side of the street, stopped, and remained seated on their bikes.

22. Officer Tritt stopped his patrol vehicle behind Mr. Reid's motorcycle, which was stopped behind Mr. Carpenter's motorcycle.

23. Officer Tritt's supervisor, Lt. Aquiler, also responded to the scene, arriving in his patrol car at approximately the same time as Officer Tritt.

24. Officer Tritt exited his patrol car, walked past Mr. Reid, and went to Mr. Carpenter.

25. Lt. Aquiler exited his patrol car and positioned himself near Mr. Reid.

26. Officer Tritt explained to Mr. Carpenter that he was being stopped because his license plate was bent up.

27. Officer Tritt asked Mr. Carpenter for his license, registration, and proof of insurance.

28. Office Tritt asked Mr. Carpenter if Mr. Reid was with him, to which Mr. Carpenter responded yes, they were riding together.

29. As Mr. Carpenter was gathering his paperwork, Officer Tritt asked Mr. Reid several times to turn off his motorcycle, saying he couldn't hear anything.

30. Mr. Reid remained seated on his motorcycle, did not turn it off, and asked Officer Tritt if he was pulling him over, too.

31. Officer Tritt walked to Mr. Reid, stated that both he and Mr. Carpenter were getting pulled over, and asked Mr. Reid once again to turn off his motorcycle. Mr. Carpenter complied with this request.

32. Mr. Reid then questioned Officer Tritt why he was being pulled over, too.

33. Officer Tritt responded that he was pulling over Mr. Reid for tailgating, adding that Mr. Reid almost slammed into the back of Mr. Carpenter. Mr. Reid disputed this allegation.

34. Officer Tritt walked back toward Mr. Carpenter and instructed Mr. Reid to give his license and registration to his partner, Lt. Aquiler.

35. Mr. Reid responded he wasn't going to give the officer anything because he wasn't being stopped for a legitimate reason.

36. Officer Tritt turned on his heels and walked back to Mr. Reid.

37. Officer Tritt and Lt. Aquiler forcibly removed Mr. Reid from his motorcycle and physically seized and held him.

38. As Officer Tritt and Lt. Aquiler continued their seizure of Mr. Reid, Mr. Reid continued disputing the legitimacy of the traffic stop.

39. Officer Tritt shot oleoresin capsicum ("OC") spray into Mr. Reid's face and eyes.

40. Officer Tritt placed Mr. Reid in handcuffs, searched him, and confined him in the back of his patrol car, telling Mr. Reid he was being arrested for resisting arrest and making threats against law enforcement.

41. At approximately 2:16 p.m., about 15 minutes after Officer Tritt had shot the OC spray into his face and eyes, Mr. Reid remained handcuffed and confined on the scene, in the back of Officer Tritt's patrol car.

42. Mr. Reid complained to Officer Tritt and Lt. Aquiler that his face was burning and that he couldn't see.

43. Mr. Reid asked for someone to please put water on his face, and then requested medical attention and said he wanted to go to the hospital.

44. Officer Tritt and Lt. Aquiler heard but ignored Mr. Reid's requests for water and medical attention, and took no steps to decontaminate him or cleanse the OC spray.

45. Officer Tritt drove Mr. Reid from the scene to the Dauphin County Booking Center.

46. During the approximate six-minute drive to the booking center, Mr. Reid continued complaining that his eye was burning and that he couldn't open it, and he repeated his request for medical attention.

47. Officer Tritt responded by telling Mr. Reid that he would get medical attention at the booking center.

48. Mr. Reid continued complaining that his eye was burning.

49. During the drive, Officer Tritt opened a rear window to the patrol car and told Mr. Reid to let the air hit his face, it would help.

50. At approximately 2:20 p.m., Officer Tritt radioed dispatch, asking them to make sure the booking center was aware of the OC exposure, adding it wasn't much but that Mr. Reid definitely needed decontamination.

51. At approximately 2:24 p.m., Officer Tritt arrived at the Dauphin County Booking Center with Mr. Reid, who by that time was groaning in pain.

52. For the next six minutes, Officer Tritt remained parked outside the booking center garage, with Mr. Reid continuing to complain of pain from the OC spray and requesting medical attention.

53. During that time, Officer Tritt continued his failure to get Mr. Reid decontaminated and took no steps to address his pain complaints.

54. At approximately 2:30 p.m., the booking center garage door opened and Officer Tritt drove his patrol car and Mr. Reid into the garage bay.

55. For the next 12 minutes, Mr. Reid remained handcuffed and confined in the rear of Officer Tritt's patrol car, and he continued complaining of pain and asking for medical attention.

56. During that time, Officer Tritt continued his failure to get Mr. Reid decontaminated and took no steps to address his pain complaints.

57. By approximately 2:40 p.m., Mr. Reid was screaming in pain, thrashing in the back of the patrol car, and pleading for medical attention.

58. As Mr. Reid continued yelling in pain and demanding medical attention, Officer Tritt made a cellphone call, stating, "We gotta get this dude out of my car like ASAP. He's gonna destroy the back of my car. He's thrashing around, kicking the glass."

59. Approximately one minute later, a Dauphin County prison lieutenant walked into the garage bay and Officer Tritt asked him for a bottle of water to dump on Mr. Reid's eyes.

60. The prison lieutenant stated that they had no water, and added, "If he burns, he burns. We didn't spray him. I thought they were supposed to have medical attention and be deconned after they're sprayed."

61. Officer Tritt responded that he was told by his supervisor to bring Mr. Reid to the booking center.

62. The prison lieutenant responded, "What, so we can do it?" and added that the decontamination was supposed to happen before Mr. Reid was brought to the booking center.

63. At approximately 2:43 p.m., Officer Tritt made a cellphone call, asking for EMS so Mr. Reid could start getting decontaminated.

64. Over the next seven minutes, Mr. Reid continued crying and begging for help, stating it felt like his body was burning.

65. During that time, EMS did not arrive and Officer Tritt took no steps to cleanse or decontaminate Mr. Reid.

66. At 2:50 p.m., booking center personnel informed Officer Tritt that they were ready to process Mr. Reid.

67. Officer Tritt cancelled his call for EMS and tried to take Mr. Tritt out of the patrol car to escort him into the booking center.

68. Mr. Reid was hunched over, had difficulty walking, was drooling and spitting up mucus, and was crying, "Please put me out. I'm on fire. My body's on fire."

69. Officer Tritt again made a call for EMS.

70. Mr. Reid collapsed into the rear seat of the patrol car.

71. After waiting another two minutes and getting no indication when EMS would arrive, Officer Tritt drove Mr. Reid from the booking center to Harrisburg Hospital.

72. Officer Tritt left the booking center with Mr. Reid at approximately 2:52 p.m.

73. During the five-minute trip to the hospital, Officer Tritt had his siren on and proceeded through red traffic signals.

74. Along the way, Mr. Reid was foaming from the mouth and Officer Tritt stopped briefly to get Mr. Reid to sit up.

75. Mr. Reid arrived at Harrisburg Hospital at approximately 2:57 p.m. and Officer Tritt escorted him, still handcuffed, into the emergency department.

76. While Mr. Reid was receiving medical attention at the hospital, Lt. Aquiler arrived and spoke with Officer Tritt about what had happened.

77. In the emergency department, Mr. Reid was evaluated and given milk-soaked rags to help neutralize the OC spray.

78. Mr. Reid's blood pressure was elevated but he was deemed medically stable and cleared for incarceration.

79. Mr. Reid was taken from the hospital back to the booking center where he was preliminarily arraigned for the following charges filed against him by Officer Tritt: aggravated assault [18 Pa. C.S. § 2702(a)(3)], resisting arrest [18 Pa. C.S. § 5104], and disorderly conduct [18 Pa. C.S. § 5503(a)(1)].

80. Officer Tritt also charged Mr. Reid with the following summary traffic offenses: following too closely [75 Pa. C.S. § 3310(a)], driving while operating privilege is suspended [75 Pa. C.S. § 1543(b)(1)(i)], classes of licenses [75 Pa. C.S. § 1504(a)], carrying and exhibiting a driver's license on demand [75 Pa. C.S. § 1511(a)], required financial responsibility [75 Pa. C.S. § 1786(f)], and driving at safe speed [75 Pa. C.S. § 3361].

81. After his preliminary arraignment on June 18, 2022, Mr. Reid was released on unsecured bail.

82. Due to ongoing chest pain, Mr. Reid returned to Harrisburg Hospital for further evaluation on June 19, 2022.

83. During that follow-up visit, Mr. Reid was diagnosed as having experienced toxic effects from OC spray exposure, including airway irritation, bronchospasms, and hypersensitivity reaction.

84. Mr. Reid was discharged with a prescription for an albuterol inhaler and prednisone.

85. Mr. Reid's chest pain continued so he returned to Harrisburg Hospital on June 22, 2022, at which time he was admitted for three days, evaluated, and ultimately diagnosed with a collapsed lung and a mild heart attack related to the OC spray exposure.

86. With the exception of the aggravated assault charge, which was withdrawn on September 29, 2022, the aforesaid charges filed by Officer Tritt against Mr. Reid remain pending, with a trial currently scheduled for June 24, 2024.

87. Mr. Reid did not commit any offense nor engage in any conduct justifying the actions of Officer Tritt or Lt. Aquiler with regard to the aforesaid vehicle stop, detention, search, seizure, use of force, arrest, and imprisonment.

88. The aforesaid vehicle stop, detention, search, seizure, arrest, and imprisonment of Mr. Reid were not supported by reasonable suspicion or probable cause.

89. As a direct and proximate result of the aforesaid incident and Defendants' aforesaid and below-described acts and omissions, Mr. Reid has sustained the following harms and damages:

   (a) Violations of his rights under the Fourth Amendment to the United States Constitution to be secure in his person from an unlawful search and seizure;

   (b) Violations of his rights under the Fourth Amendment to the United States Constitution to not be subjected to an unreasonable use of force;

   (c) Physical injuries requiring medical attention and other health care including but not limited to OC spray exposure with associated burning and breathing issues, a collapsed lung, and a mild heart attack;

11

  (d) Pain, suffering, fear, anxiety, embarrassment, humiliation, emotional distress, and post-traumatic stress, some or all of which may be permanent;

  (e) Past and future healthcare expenses;

  (f) Confinement and loss of liberty; and

  (g) Legal expenses.

90. Defendants acted in concert and conspiracy and are jointly and severally responsible for all harms and damages directly and proximately caused to Mr. Reid.

91. Defendants acted negligently, willfully, wantonly, intentionally, and/or with deliberate indifference to Mr. Reid's constitutional, statutory, and common law rights.

<u>**FIRST CLAIM FOR RELIEF**</u>
**ARNEZ L. REID v. ISAAC TRITT**
*(42 U.S.C. § 1983 – Fourth Amendment – Search and Seizure)*

92. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

93. Officer Tritt deprived Mr. Reid of his right to be secure in his person from an unlawful search and seizure, thus violating Mr. Reid's rights as guaranteed by the Fourth Amendment to the United States Constitution.

94. Officer Tritt initiated and conducted a vehicle stop of Mr. Reid which was not supported by reasonable suspicion, detained Mr. Reid in the absence of reasonable suspicion or probable cause, and conducted a search and seizure of Mr. Reid not supported by reasonable suspicion or probable cause.

95. As a direct and proximate result of Officer Tritt's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

## SECOND CLAIM FOR RELIEF
### ARNEZ L. REID v. ISAAC TRITT
*(42 U.S.C. § 1983 – Fourth Amendment – Use of Unreasonable Force)*

96. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

97. Officer Tritt deprived Mr. Reid of his right to be secure in his person from an unreasonable use of force, thus violating Mr. Reid's rights as guaranteed by the Fourth Amendment to the United States Constitution.

98. Officer Tritt's use of force against Mr. Reid was unreasonable.

99. In light of the unlawful nature of the stop and detention of Mr. Reid, Officer Tritt was not permitted to use any force against Mr. Reid.

100. During the aforesaid stop and detention of Mr. Reid, Officer Tritt forcibly seized Mr. Reid and shot OC spray into his face and eyes.

101. Officer Tritt failed and refused to reasonably or timely provide or facilitate the cleansing and decontamination of Mr. Reid from the effects of the OC spray.

102. Officer Tritt failed and refused to timely or reasonably provide or obtain first aid or medical attention for Mr. Reid despite knowing Mr. Reid was in acute pain and distress and was likely in immediate need of such aid and/or attention.

103. Officer Tritt displayed deliberate indifference to the battery and physical injuries he inflicted upon Mr. Reid.

104. Officer Tritt displayed deliberate indifference to Mr. Reid's need for first aid or medical attention, and his need to be promptly decontaminated from the effects of the OC spray.

105. As a direct and proximate result of Officer Tritt's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

### THIRD CLAIM FOR RELIEF
### ARNEZ L. REID v. ANTHONY AQUILER
*(42 U.S.C. § 1983 – Fourth Amendment – Search and Seizure)*

106. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

107. Lt. Aquiler deprived Mr. Reid of his right to be secure in his person from an unlawful search and seizure, thus violating Mr. Reid's rights as guaranteed by the Fourth Amendment to the United States Constitution.

108. During the above-described vehicle stop, Lt. Aquiler arrived and remained on the scene as a supervisor, heard and saw the interaction between Mr. Reid and Officer Tritt, spoke and interacted with Mr. Reid, and participated in, acquiesced in, and/or ratified the detention and arrest of Mr. Reid.

109. Lt. Aquiler failed and refused to intervene to attempt to prevent or stop Officer Tritt's unlawful search and seizure of Mr. Reid, despite having a realistic and reasonable opportunity to do so.

110. As a direct and proximate result of Lt. Aquiler's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

### FOURTH CLAIM FOR RELIEF
### ARNEZ L. REID v. ANTHONY AQUILER
*(42 U.S.C. § 1983 – Fourth Amendment – Use of Unreasonable Force)*

111. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

112. Lt. Aquiler deprived Mr. Reid of his right to be secure in his person from an unreasonable use of force, thus violating Mr. Reid's rights as guaranteed by the Fourth Amendment to the United States Constitution.

113. During the above-described vehicle stop, Lt. Aquiler arrived and remained on the scene as a supervisor, heard and saw the interaction between Mr. Reid and Officer Tritt, spoke and interacted with Mr. Reid, and participated in, acquiesced in, and/or ratified the use of force against Mr. Reid.

114. Lt. Aquiler failed and refused to reasonably or timely provide or facilitate the cleansing and decontamination of Mr. Reid from the effects of the OC spray.

115. Lt. Aquiler failed and refused to timely or reasonably provide or obtain first aid or medical attention for Mr. Reid despite knowing Mr. Reid was in acute pain and distress and was likely in immediate need of such aid and/or attention.

116. Lt. Aquiler displayed deliberate indifference to the battery and physical injuries inflicted upon Mr. Reid.

117. Lt. Aquiler displayed deliberate indifference to Mr. Reid's need for first aid or medical attention, and his need to be promptly decontaminated from the effects of the OC spray.

118. Lt. Aquiler failed and refused to intervene to attempt to prevent or stop Officer Tritt's use of unreasonable force against Mr. Reid, despite having a realistic and reasonable opportunity to do so.

119. As a direct and proximate result of Lt. Aquiler's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

## FIFTH CLAIM FOR RELIEF
## ARNEZ L. REID v. JOSEPH N. HOGARTH
*(42 U.S.C. § 1983 – Monell Liability)*

120. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

121. At all times relevant and material hereto, Chief Hogarth was personally and directly responsible for developing, formulating, evaluating, instituting, administering, overseeing, and reviewing the training, supervision, and discipline of police officers and police lieutenants in the Penbrook Borough Police Department, including but not limited to Officer Tritt and Lt. Aquiler, especially with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

122. At all times relevant and material hereto, Chief Hogarth was personally and directly responsible for developing, formulating, establishing, issuing, instituting, maintaining, reviewing, updating, and/or revising the policies, procedures, directives, practices, and customs of the Penbrook Borough Police Department, especially with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

123. The aforesaid failure of Officer Tritt and Lt. Aquiler to reasonably or timely provide, facilitate, or obtain first aid, medical care, or decontamination for Mr. Reid was a direct, proximate, and predictable result of Chief Hogarth's failure to properly and/or sufficiently

develop, formulate, evaluate, institute, administer, oversee, or review the training, supervision, and discipline of law enforcement personnel in the Penbrook Borough Police Department with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

124. The aforesaid failure of Officer Tritt and Lt. Aquiler to reasonably or timely provide, facilitate, or obtain first aid, medical care, or decontamination for Mr. Reid was a direct, proximate, and predictable result of Chief Hogarth's failure to properly and/or sufficiently develop, formulate, establish, issue, institute, maintain, review, update, and/or revise the policies, procedures, directives, practices, and customs of the Penbrook Borough Police Department with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

125. As a direct and proximate result of Chief Hogarth's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

### SIXTH CLAIM FOR RELIEF
### ARNEZ L. REID v. PENBROOK BOROUGH
### *(42 U.S.C. § 1983 – Monell Liability)*

126. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

127. At all times relevant and material hereto, Penbrook Borough was directly responsible for developing, formulating, evaluating, instituting, administering, overseeing, and reviewing the training, supervision, and discipline of police officers and police lieutenants in the

Penbrook Borough Police Department, including but not limited to Officer Tritt and Lt. Aquiler, especially with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

128. At all times relevant and material hereto, Penbrook Borough was directly responsible for developing, formulating, establishing, issuing, instituting, maintaining, reviewing, updating, and/or revising the policies, procedures, directives, practices, and customs of the Penbrook Borough Police Department, especially with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

129. The aforesaid failure of Officer Tritt and Lt. Aquiler to reasonably or timely provide, facilitate, or obtain first aid, medical care, or decontamination for Mr. Reid was a direct, proximate, and predictable result of Penbrook Borough's failure to properly and/or sufficiently develop, formulate, evaluate, institute, administer, oversee, or review the training, supervision, and discipline of law enforcement personnel in the Penbrook Borough Police Department with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

130. The aforesaid failure of Officer Tritt and Lt. Aquiler to reasonably or timely provide, facilitate, or obtain first aid, medical care, or decontamination for Mr. Reid was a direct,

proximate, and predictable result of Penbrook Borough's failure to properly and/or sufficiently develop, formulate, establish, issue, institute, maintain, review, update, and/or revise the policies, procedures, directives, practices, and customs of the Penbrook Borough Police Department with regard to the following: providing or obtaining first aid or medical care for individuals in police custody; the use of OC spray; the decontamination of individuals exposed to OC spray; and the manner and timeframe within which such decontamination is to be accomplished.

131. As a direct and proximate result of Penbrook Borough's aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

### SEVENTH CLAIM FOR RELIEF
### ARNEZ L. REID v. ISAAC TRITT and ANTHONY AQUILER
*(State Law Claims)*

132. Mr. Reid incorporates by reference the allegations in the preceding paragraphs as fully as though each were set forth at length herein.

133. Defendants' aforesaid acts and omissions constituted assault, battery, false arrest, and false imprisonment under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate those claims.

134. As a direct and proximate result of Defendants' respective aforesaid acts and omissions, Mr. Reid has sustained the harms and damages set forth in ¶ 89, *supra*.

### REQUEST FOR RELIEF AND JURY DEMAND

In light of the foregoing, Plaintiff requests the following relief:

(a) This court's declaration that Defendants' acts and omissions violated Plaintiff's constitutional rights;

(b) Compensatory damages;

(c) Punitive damages as to Defendants Officer Tritt and Lt. Aquiler only;

(d) Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(e) Such other and further relief as the court deems reasonable and just.

Plaintiff demands a jury trial as to each Defendant and as to each claim for relief.

DATE: June 14, 2024                             s/ Richard M. Wiener
                                                Richard M. Wiener, Esquire
                                                PA Attorney I.D. No. 68041
                                                Law Offices of Richard M. Wiener, LLC
                                                161 Washington Street, Suite 400
                                                Conshohocken, PA 19428
                                                Ph: (610) 832-8050
                                                Fx: (610) 487-0300
                                                Email: rwiener@wienerlegal.com
                                                *Attorney for Plaintiff*